In re MARRIAGE OF JANE R. BRYANT, Petitioner-Appellee, and JOHN H. BRYANT, Respondent-Appellant.

First District (1st Division)   No. 1—88—0604

Opinion filed September 28, 1990.—Rehearing denied December 13, 1990.

James R. Truschke & Associates, P.C., of Arlington Heights (James R. Truschke and Kurt A. Richter, of counsel), for appellant.

Ilene M. Wolf and Randy G. Black, both of Park Ridge, for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

John Bryant (respondent) appeals from the circuit court order denying his petition to terminate an obligation to pay maintenance to his ex-wife, Jane Bryant (petitioner), pursuant to a dissolution of marriage judgment. Respondent contends that the circuit court, in concluding that respondent failed to show a substantial change of circumstances, improperly considered income generated by property awarded to respondent as his portion of the parties' marital property. Additionally, respondent contends the circuit court abused its discretion in denying his petition. For the reasons stated in this opinion, the order of the circuit court is affirmed.

On January 21, 1982, Judge Robert Cusack of the circuit court of Cook County entered a judgment dissolving the marriage between petitioner and respondent following a full trial on the merits. Under the terms of this judgment, respondent was to pay petitioner permanent maintenance in the amount of $1,500 per month.

On October 11, 1984, petitioner filed a petition alleging an arrearage in maintenance. On January 2, 1985, respondent filed a petition to terminate maintenance predicated upon his loss of employment and salary. On December 1, 1987, after hearing testimony and argument on the petitions, Judge Barbara Disko ordered the payment of the arrearages and denied respondent's petition to terminate maintenance.

The terms of the January 21, 1982, judgment relevant to this appeal require that respondent pay petitioner $1,500 per month in permanent maintenance, with such payments continuing until petitioner's death. Upon respondent's death, the award would remain as a claim against his estate. The judgment further provides that all shares of

stock, except shares of Standard (Amoco) Oil of Indiana common stock held jointly, are the sole and exclusive property of respondent.

The judgment also contained a handwritten interlineation regarding what contingencies would affect respondent's maintenance obligation. A major contention between the parties on appeal concerns the meaning of this handwritten interlineation. This contention is complicated because the parties dispute which of three different versions of the judgment is "the" judgment entered by Judge Cusack.

One version of the judgment was entered with the clerk of the circuit court on January 21, 1982, and appears in the appellate record. This version contains the signature of Judge Cusack and provides:

> "This payment shall continue until such time as the petitioner shall die. The sum is non-modifiable even if the petitioner works or remarries but is subject to modification if the petitioner has a substantial change in circumstances." (Interlineation underlined.)

The second version, also entered January 21, 1982, appears in the appellate record, but does not contain Judge Cusack's signature. The record indicates that petitioner attached and quoted this version in various petitions and papers submitted to the court. This version provides:

> "This payment shall continue until such time as the petitioner shall die. This sum is non-modifiable even if the petitioner works or remarries but would be subject to modification if the respondent has a substantial change in circumstances." (Interlineation underlined.)

The final version does not appear in the appellate record, but is attached to respondent's reply brief. According to respondent's reply brief, the clerk of the circuit court certified on January 25, 1982, that this final version is a true, perfect and complete copy of the judgment. This version contains the same language as the second version, but is in different, more legible handwriting.

At the December 1, 1987, hearing on the parties' respective petitions, Judge Disko sustained petitioner's objection to respondent's attempt to explain the interlineation for the court. The court also refused respondent's submission to the court of a certified copy of the judgment, explaining that she was bound by the four corners of the judgment, and noted that she had the "original" before her. During her ruling, Judge Disko reiterated that she was bound by the terms of the judgment, but indicated the opportunity for modification certainly existed.

During the hearing, respondent testified concerning his financial

circumstances. He testified that he was "layed off" from Amoco Oil on July 1, 1984, and, at the time of trial, was surviving on individual retirement accounts withdrawals, social security, stock dividends, pension income, and fees earned as a consultant. In particular, respondent testified to his financial situation as follows:

| | |
|---|---|
| Respondent's salary from Amoco Oil at the time of judgment | $69,900/year. |
| Respondent's final salary | $78,600/year. |
| Amoco pension income | $39,500/year. |
| Consulting income | $2,000/year. |
| Social security | $7,824/year. |
| CD and stock income | $6,000/year. |

In addition to the above income, respondent testified that upon his termination from Amoco, he received a $78,000 lump sum distribution and $8,000 for vacation pay. Respondent further testified he received 3,300 shares of stock, having a $60-per-share value at the time of distribution. Eventually, respondent rolled these securities over into an IRA, which retains an approximate annual value of between $200,000 and $210,000, despite respondent's annual average withdrawals of about $20,000.

Besides the income and assets listed above, respondent testified regarding his current expenses. He testified his expenses were approximately $63,260 per year and consisted of his condominium mortgage payment, taxes, education expenses for his children, and support for his mother. On cross-examination, respondent admitted that none of these expenses were mandated by the underlying judgment.

At the close of the evidence, petitioner moved for a directed finding on respondent's petition to terminate maintenance, arguing that respondent failed to carry his burden of showing a substantial change of circumstances. The court agreed that respondent failed to meet his burden and denied his petition.

The first issue presented on review is whether the underlying judgment, regardless of the version, limited the circuit court's ability to consider a substantial change of circumstances in the financial situation of either respondent or petitioner. Petitioner contends that the underlying judgment precludes the circuit court from considering a material change in respondent's circumstances. On the other hand, respondent contends the underlying order allows such consideration. Of course, each party relies on a different version of the underlying judgment to support his or her respective contentions. However, in light of the Illinois Supreme Court's recent decision in *In re Marriage of Sutton* (1990), 136 Ill. 2d 441, 443, it is not necessary to resolve which

version of the underlying judgment is the correct version.

In *Sutton*, the court interpreted the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 101 *et seq.*) and explained the circumstances under which a circuit court is precluded from modifying a maintenance award under the Act. There, the wife-petitioner sought an increase in her maintenance award contained in a judgment that incorporated a legal separation agreement previously reached by the parties. The husband-respondent argued the court was prohibited from .modifying the award because the incorporated settlement agreement contained a provision that precluded modification of the award absent the consent of both parties.

■ In rejecting the respondent's contention, the court construed sections 502 and 510 of the Act. The court noted that under section 510(a) of the Act, the provisions of any judgment respecting maintenance or support are generally modifiable, except as otherwise provided in paragraph (f) of section 502. (Ill. Rev. Stat. 1987, ch. 40, par. 510(a).) Under the latter paragraph, a judgment attendant upon the dissolution of marriage that incorporates the terms of a settlement agreement may expressly preclude or limit modification of the terms of the judgment if the agreement so provides. (Ill. Rev. Stat. 1987, ch. 40, par. 502(f).) The court stated that unless section 502(f) is applicable, the court's power to modify the terms of an agreement is clear. (*Sutton*, 136 Ill. 2d at 445.) Thus, because the terms of the judgment in this case do not incorporate the terms of a settlement agreement pursuant to section 502(f), the court had power to modify the maintenance award.

The second issue presented on appeal is whether the circuit court erred in considering respondent's pension and stock income in determining whether there existed a substantial change of circumstances. Respondent contends that since he was awarded the underlying stock and pension as part of a property award, the court is precluded from considering the income from this property in determining whether modification is proper. This court finds respondent's contention to be without merit.

■ In determining whether and to what extent a maintenance award can be modified, a circuit court may consider the same factors which, under the statute, are to be assessed in making the initial award. (*In re Marriage of Chalkley* (1981), 99 Ill. App. 3d 478, 482, 426 N.E.2d 237, 240.) These factors are set forth under section 504(b) of the Act. (Ill. Rev. Stat. 1987, ch. 40, par. 504(b).) One of the factors the court may consider includes "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the

spouse seeking maintenance." (Ill. Rev. Stat. 1987, ch. 40, par. 504(b)(6).) The plain language of this section makes clear that the circuit court properly considered respondent's pension and stock dividend income in ruling on his petition to modify. This income bears directly on respondent's ability to meet his needs while also meeting the needs of petitioner.

The final issue presented on review is whether the trial court abused its discretion in denying respondent's petition to terminate maintenance. In denying respondent's petition, the court, after hearing all the evidence, concluded that respondent failed to meet his burden in proving that the maintenance award should be terminated or modified.

■■ A circuit court's denial of a petition to terminate maintenance will not be reversed unless such denial was an abuse of discretion. (*In re Marriage of Chalkley*, 99 Ill. App. 3d at 482, 426 N.E.2d at 241.) At the time of the divorce decree, respondent earned $69,000 a year. At the hearing of the petition, the evidence showed respondent receiving $39,500 a year in pension, $2,000 annually in consulting income, $7,825 annually in social security, $6,000 annually in certificate of deposit and stock income, and annual withdrawals approximating $20,000 from an IRA retaining an approximate value of $200,000. No evidence was presented regarding petitioner's financial circumstances. Based on the above evidence, no abuse of discretion has been shown.

For the foregoing reasons, we affirm the order of the trial court denying respondent's petition to terminate maintenance.

Affirmed.

CAMPBELL and MANNING, JJ., concur.